**Norris Wayne HICKS, TDCJ No. 505593, Plaintiff,**

v.

**Patricia BRYSCH, District Clerk, Karnes County, Texas, Defendant.**

**No. CIV. SA–96–CA–1005.**

United States District Court, W.D. Texas, San Antonio Division.

Sept. 29, 1997.

**MEMORANDUM OPINION AND ORDER**

PRADO, District Judge.

Plaintiff Norris Wayne Hicks filed this lawsuit originally seeking a writ of mandamus to compel the defendant, a state district clerk, to file a state civil lawsuit plaintiff had previously submitted to the defendant for filing in the state courts. Plaintiff subsequently supplemented his pleadings to include requests for injunctive relief and unspecified monetary damages. The defendant timely answered and has filed a motion for summary judgment in which she avers that the plaintiff's submissions to her did not satisfy the applicable statutory procedural prerequisites to the filing of lawsuits by prisoners in the Texas courts. For the reasons set forth at length hereinafter, defendant's motion for summary judgment will be granted and plaintiff's claims herein dismissed with prejudice as frivolous and malicious.

## I. Statement of the Case

### A. Factual Background

On July 1, 1996, while an inmate at the Texas Department of Criminal Justice's ["TDCJ's"] John B. Connally Unit in Kenedy, Texas, plaintiff mailed an original and nine copies of a proposed state civil lawsuit to the defendant.[1] On July 10, 1996, plaintiff received that same package back along with a notice indicating that plaintiff's submission did not comply with Sections 14.001 et seq. of the Texas Civil Practice and Remedies Code.[2] On July 15, 1996, plaintiff re-submitted his proposed state civil lawsuit along with a letter requesting the defendant to advise plaintiff as to the specific defects, if any, remaining in plaintiff's submission.[3] Plaintiff received no response to that re-submission and, on August 27, 1996, plaintiff sent yet another initial pleading in a proposed state civil lawsuit to the defendant along with five other pleadings but plaintiff never received any acknowledgment of defendant's receipt of same.[4] On September 4, 1996, plaintiff sent another letter to the defendant asking the defendant to file plaintiff's proposed state civil lawsuit.[5] On both October 24 and December 10, 1996, plaintiff sent letters to defendant inquiring about the status of his submissions to the defendant's office.[6]

### B. Procedural History

Plaintiff originally submitted this federal lawsuit to this Court along with an incomplete application for leave to proceed In For-

---

1. *See* Plaintiff's Original Petition for Writ of Mandamus, filed December 3, 1996, docket entry no. 12.

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.*

6. *See* Plaintiff's Answers to the Court's Questionnaire, filed April 29, 1997, docket entry no. 23, at question 10.

ma Pauperis on September 23, 1996.[7] The Magistrate Judge issued an Order on September 25, 1996 directing plaintiff to comply with the financial responsibility provisions of the Prison Litigation Reform Act of 1996 ["PLRA"],[8] effective April 26, 1996,[9] which require a prisoner requesting leave to proceed In Forma Pauperis to furnish federal courts with detailed financial information sufficient to allow the federal courts to calculate the average monthly balance and average monthly deposits in the prisoner's inmate trust account for the past six months.[10] When plaintiff failed to comply with that directive, on November 21, 1996, this Court dismissed plaintiff's claims without prejudice for want of prosecution.[11]

On November 25, 1996, plaintiff filed a motion to reconsider the dismissal of his claims to which he attached some. but not all, of the financial information required by the PLRA.[12] In an Order issued December 3, 1996, this Court vacated the judgment dismissing plaintiff's claims and directed plaintiff to pay the initial partial filing fee mandat-

ed by the PLRA.[13] To date, plaintiff has failed to pay the IPFF mandated by the PLRA and the Magistrate Judge and this Court have denied all of the.plaintiff's motions requesting waiver of the payment of the IPFF.[14] Nonetheless, in an Order issued May 20, 1997, the Magistrate Judge directed service upon the defendant despite plaintiff's failure to pay the IPFF.[15]

Meanwhile, in an Order issued April 16, 1997, the Magistrate Judge explained to the plaintiff that this Court lacked the authority to issue a writ of mandamus against the defendant and directed the plaintiff to answer a detailed questionnaire designed to elicit from the plaintiff the specific facts underlying his claims herein.[16] On April 29, 1997, plaintiff filed a supplemental pleading in which he asserted that his claims for relief herein were based upon Title 42 U.S.C. Section 1983.[17] On April 29, 1997 plaintiff also filed his answers to the Court's questionnaire and asserted therein for the first time claims for injunctive relief and unspecified monetary damages.[18]

---

7. *See* docket entry no. 1.

8. Pub.L. No. 104–134, 110 Stat. 1321.

9. *See Ayo v. Bathey,* 106 F.3d 98, 100 (5th Cir. 1997), (holding that the financial responsibility provisions of the PLRA require a prisoner seeking leave to proceed In Forma Pauperis to file an affidavit listing his assets and to submit a certified copy of his inmate trust fund account statement or an institutional equivalent reflecting the six-month period immediately preceding the filing of the complaint even with regard to a case in which In Forma Pauperis status was granted prior to the effective date of the PLRA, i.e., April 26, 1996); *Strickland v. Rankin County Correctional Facility,* 105 F.3d 972, 973 (5th Cir.1997), (holding the same); *Adepegba v. Hammons,* 103 F.3d 383, 384–87 (5th Cir.1996), (holding that the PLRA's "three strikes" provision applied to an appeal pending prior to the effective date of the PLRA and authorized denial of In Forma Pauperis status based on lawsuits and appeals dismissed as frivolous prior to the effective date of the PLRA); *Williams v. Edwards,* 87 F.3d 126, 133 (5th Cir.1996), (recognizing that the PLRA became effective April 26, 1996).

10. *See Ayo v. Bathey,* 106 F.3d at 100, and 28 U.S.C. § 1915(a)(2). In addition, the PLRA, i.e., § 1915(b), also requires a prisoner who proceeds In Forma Pauperis to pay the full amount of the filing fee, which may be collected in installments withdrawn from the prisoner's inmate trust fund account. *Ayo v. Bathey,* 106 F.3d at 100. "The

fee provisions of the PLRA were designed to deter frivolous prisoner litigation in the courts 'by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.' " *Jackson v. Stinnett,* 102 F.3d 132, 136–37 (5th Cir.1996). *Accord Williams v. Roberts,* 116 F.3d 1126, 1127–28 (5th Cir.1997).

11. *See* docket entry nos. 6 and 7.

12. *See* docket entry no. 9.

13. *See* docket entry no. 11. .

14. Plaintiff has filed several motions requesting that this Court, the Magistrate Judge, or both waive the PLRA's IPFF requirement or otherwise excuse plaintiff from paying the statutorily-mandated IPFF. *See* docket entry nos. 13, 16, 19, 20, 24, and 26. This Court and the Magistrate Judge denied all of those motions. *See* docket entry nos. 15, 17, 18, 21, and 25.

15. *See* docket entry no. 27.

16. *See* docket entry no. 18.

17. *See* docket entry no. 22.

18. *See* Plaintiff's Answers to the Court's Questionnaire, filed April 29, 1997, docket entry no. 23, at p. 22A.

On June 19, 1997, defendant filed a timely answer in which she alleged that the plaintiff's submissions to the Karnes County District Clerk's office all failed to satisfy the requirements of Chapter 14 of the Texas Civil Practice and Remedies Code, more specifically that the plaintiff had failed to comply with either the financial information requirement of Section 14.006(f) or with the requirement of Section 14.004 that he file a detailed affidavit regarding his litigation history.[19]

On June 25, 1997, plaintiff filed a motion for default judgment in which he challenged the sufficiency of the defendant's answer.[20] In a separate motion filed that same date, plaintiff demanded that this Court direct the defendant to file a detailed answer and to respond individually and separately to each and every factual allegation contained in plaintiff's original pleading and questionnaire answers.[21]

In an Order issued June 30, 1997, the Magistrate Judge advised the parties that the defendant's original answer would be treated for all purposes as a motion for summary judgment, explained the nature of summary judgment procedure and proof for the benefit of the *pro se* plaintiff, and set deadlines for the filing of proper summary judgment evidence supporting and opposing same.[22] On July 10, 1997, plaintiff filed objections to, and an appeal from, the Magistrate Judge's Order of June 30, 1997 and demanded therein that the referral of this cause to the Magistrate Judge be withdrawn.[23]

On July 24, 1997, defendant filed a separate motion for summary judgment to which she attached an affidavit asserting that the plaintiff's submissions to the Karnes County District Court had all failed to comply with Section 14.004 of the Texas Civil Practice and Remedies Code.[24] Thereafter, plaintiff filed no less than five separate motions requesting a continuance on the deadline for his filing of proper summary judgment evidence opposing defendant's motion, an Order from this Court authorizing discovery from various non-parties, and an evidentiary hearing for the purpose of permitting him to develop the factual bases underlying his claims herein.[25] The Magistrate Judge denied the first two of those motions in an Order issued August 20, 1997, in which she explained to plaintiff that he had failed to establish a right to such a continuance or to the discovery in question.[26] On September 3, 1997, plaintiff filed objections to the Magistrate Judge's Order denying plaintiff's discovery requests.[27]

On August 18, 1997, plaintiff filed his response to defendant's motion for summary judgment and alleged therein that his efforts to file state civil lawsuits in Bee County, Texas had been denied for the same reasons that his efforts to file such lawsuits in Karnes County had been rejected.[28] Significantly, at no time in this lawsuit has plaintiff alleged any specific facts or furnished this Court with any proper summary judgment evidence establishing that he ever complied with Section 14.004 of the Texas Civil Practice and Remedies Code when he submitted his proposed state civil lawsuits to the defendant herein.

Meanwhile, in an Order issued July 25, 1997, the Magistrate Judge rescinded this Court's prior Order granting plaintiff leave to proceed In Forma Pauperis and directed plaintiff to pay the full filing fee in this cause.[29] Plaintiff filed objections to that Or-

**19.** *See* docket entry no. 29.

**20.** *See* docket entry no. 31.

**21.** *See* docket entry no. 30.

**22.** *See* docket entry no. 33.

**23.** *See* docket entry no. 34.

**24.** *See* docket entry no. 35.

**25.** *See* docket entry nos. 38–42.

**26.** *See* docket entry no. 44.

**27.** *See* docket entry no. 45.

**28.** *See* docket entry no. 43.

**29.** *See* docket entry no. 36. The Magistrate Judge based her action upon new information that indicated the plaintiff had previously filed not less than four lawsuits or appeals that had been dismissed as frivolous and held that the Fifth Circuit's opinion in *Adepegba v. Hammons,* 103 F.3d 383, 384–87 (5th Cir.1996), (holding that the PLRA's "three strikes" provision applied to an appeal pending prior to the effective date of the PLRA and authorized denial of In Forma

der on August 4, 1997.[30] However, in an Order issued September 8, 1997, this Court affirmed the Magistrate Judge's ruling rescinding the prior grant of plaintiff's In Forma Pauperis request and directed plaintiff to pay the full filing fee in this cause by September 26, 1997.[31] To date, plaintiff has failed to pay the filing fee in this cause.

## II. *Analysis and Authorities*

### A. *Plaintiff's Request for Withdrawal of the Referral*

■ In view of the plaintiff's highly inappropriate and personal attack upon the Magistrate Judge contained in plaintiff's pleading filed July 10, 1997,[32] to avoid any potential appearance of impropriety this Court will withdraw the referral of this cause to the Magistrate Judge. However, plaintiff is advised that this Court has reviewed the entire case file and finds no error committed by the Magistrate Judge during her supervision of the pretrial phase of this cause.

### B. *Summary Judgment Procedure and Proof*

A brief explanation regarding summary judgment motions is in order.[33] The Fifth Circuit has held that a District Court may grant a summary judgment *sua sponte, provided* that the adverse party is afforded proper notice and an opportunity to submit documents opposing summary judgment.[34] The Magistrate Judge's Order and Advisory of June 30, 1997 was designed to afford plaintiff exactly such notice and opportunity.

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure. These motions permit the Court to resolve lawsuits without the necessity of trials if there is no *genuine* dispute as to any facts which are material and the moving party is entitled to judgment as a matter of law.[35]

■ Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.[36]

Thus, when a motion for summary judgment is filed and is accompanied by competent supporting evidence, a court may grant the motion if the opposing party fails to present controverting evidence.[37] Summary Judg-

Pauperis status based on lawsuits and appeals dismissed as frivolous prior to the effective date of the PLRA), mandated that plaintiff's request for leave to proceed In Forma Pauperis in this cause be denied.

**30.** *See* docket entry no. 37.

**31.** *See* docket entry no. 47.

**32.** *See* docket entry no. 34.

**33.** *Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981). While specific notice regarding summary judgment procedures is *not* required with regard to *pro se* litigants, *see Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir.1992), this Court prefers to provide such notice whenever possible.

**34.** *See Washington v. Resolution Trust Corporation*, 68 F.3d 935, 939 (5th Cir.1995); *Nowlin v. Resolution Trust Corporation*, 33 F.3d 498, 504 n. 9 (5th Cir.1994); *Leatherman v. Tarrant County Narcotics and Intelligence Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir.1994); *Judwin Properties, Inc. v. U.S. Fire Insurance Co.*, 973 F.2d 432,

436 (5th Cir.1992); *Resolution Trust Corporation v. Camp*, 965 F.2d 25, 28 (5th Cir.1992); *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 79 n. 5 (5th Cir.1992); *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir.1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992); and *Arkwright–Boston Manufacturers Mutual Ins. Co. v. Aries Marine Corporation*, 932 F.2d 442, 445 (5th Cir.1991).

**35.** *See* Fed.R.Civ.P. 56(e); *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1179–80 (5th Cir.1996); *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir.1991); and *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

**36.** Rule 56(e), Federal Rules of Civil Procedure.

**37.** Rule 56(e) only requires the summary judgment nonmovant to submit affidavits and other summary judgment proof when the original motion is supported by *proper* affidavits or other summary judgment proof. *See E.E.O.C. v. Brown*

**806**

ment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[38] Federal summary judgment procedure requires the court to "pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim." [39]

■ In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion.[40] While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, he need not negate the essential elements of the nonmovant's case.[41] In order for the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant.[42] To satisfy this

& Root, Inc., 688 F.2d 338, 341 n. 2 (5th Cir. 1982); see also Orthopedic & Sports Injury Clinic v. Wang, 922 F.2d 220, 225 (5th Cir.1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment).

38. E.E.O.C. v. Texas Instruments, Inc., 100 F.3d at 1179–80; Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.1992), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); and Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir.1992). "Material facts" are facts that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); United States v. Bloom, 112 F.3d 200, 205 (5th Cir.1997); Fraire v. City of Arlington, 957 F.2d at 1273; Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d at 997; Lechuga v. Southern Pacific Transportation Company, 949 F.2d 790, 794 (5th Cir.1992). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510; Stults v. Conoco, Inc., 76 F.3d 651, 654 (5th Cir.1996); Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 588 (5th Cir.1995).

39. Tacon Mechanical Contractors v. Aetna Casualty and Surety Company, 65 F.3d 486, 488 (5th Cir.1995).

40. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 2511 n. 4, 91 L.Ed.2d 202 (1986); Slaughter v. Southern Talc Co., 949 F.2d 167, 170 (5th Cir.1991); Fields v. City of South Houston, Texas, 922 F.2d at 1187; Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 198 (5th Cir.1988), cert. denied, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988); and Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

41. See Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir.1996); and Little v. Liquid Air Corporation, 37 F.3d 1069, 1075 (5th Cir. 1994), citing Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S.Ct. at 2553. The moving party may carry its burden by pointing out the absence of evidence supporting the nonmoving party's case. Stults v. Conoco, Inc., 76 F.3d at 656; National Association of Government Employees v. City Public Service Board, 40 F.3d 698, 712 (5th Cir. 1994); and Latimer v. Smithkline & French Laboratories, 919 F.2d 301, 303 (5th Cir.1990).

42. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50, 106 S.Ct. at 2510–11; Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir.1990); Bache v. American Telephone & Telegraph Co., 840 F.2d 283, 287 (5th Cir. 1988), cert. denied, 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988); and Williams v. Adams, 836 F.2d 958, 961 (5th Cir.1988).

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250–51, 106 S.Ct. at 2511; and Friou v. Phillips Petroleum Co., 948 F.2d 972, 974 (5th Cir.1991); Robertson v. Arco Oil & Gas Co., 948 F.2d 132, 133 (5th Cir.1991); Jackson Court Condominiums v. City of New Orleans, 874 F.2d 1070, 1081 (5th Cir.1989). "[A] genuine dispute requires more than showing some metaphysical doubt—there must be an issue for trial." Meyers v. M/V Eugenio C, 919 F.2d 1070, 1072 (5th Cir.1990). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. at 250, 106 S.Ct. at 2510; E.E.O.C. v. Texas Instruments, Inc., 100 F.3d at 1180; Stults v. Conoco, Inc., 76 F.3d at 654; Cormier v. Pennzoil, 969 F.2d 1559, 1560 (5th Cir.1992); Fraire v. City of Arlington, 957 F.2d at 1273; Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d at 997; and Lechuga v.

burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[43] A summary judgment movant who will *not* bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case.[44] A district court is not compelled to limit the basis for a summary judgment to those facts listed in the motion for summary judgment but may grant a summary judgment on facts not briefed by the movant, as long as the non-movant has notice of the issue.[45]

Once the moving party has carried that burden, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.[46] The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists.[47] The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions; instead, he must present affirmative *evidence* in order to defeat a properly supported motion for summary judgment.[48] Nonmovants are required

*Southern Pacific Transportation Company*, 949 F.2d at 794.

**43.** See *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2552; *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Friou v. Phillips Petroleum Co.*, 948 F.2d at 974; *Robertson v. Arco Oil & Gas Co.*, 948 F.2d at 133; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 198–99; and *Fontenot v. Upjohn Co.*, 780 F.2d at 1194.

**44.** See *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Pavone v. Mississippi Riverboat Amusement Corporation*, 52 F.3d 560, 565 (5th Cir.1995), (holding that the moving party need not support its motion with affidavits or other evidence if the non-movant will bear the burden of proof at trial); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994); and *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.1992), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

**45.** *Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090, 1093 (5th Cir.1996).

**46.** See *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir.1996); *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Garcia v. Elf Atochem North America*, 28 F.3d 446, 449 (5th Cir.1994); *Slaughter v. Southern Talc Co.*, 949 F.2d at 170; *Fields v. City of South Houston, Texas*, 922 F.2d at 1187; *Meyers v. M/V Eugenio C*, 919 F.2d at 1072; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; and *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

**47.** See *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Garcia v. Elf Atochem North America*, 28 F.3d at 449; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.1991); *Fields v. City of South Houston, Texas*, 922 F.2d at 1187; *Meyers v. M/V Eugenio C*, 919 F.2d at 1072; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 198–99; and Fed.R.Civ.P. 56(e).

**48.** See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–55, 106 S.Ct. 2505, 2510–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *MacMillan v. United States*, 46 F.3d 377, 380 (5th Cir.1995), (holding that the nonmovant may not carry its burden by simply showing that there is some metaphysical doubt as to the material facts); *Little v. Liquid Air Corp.*, 37 F.3d at 1075, (holding that a nonmovant cannot discharge his burden with some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994), *cert. denied sub nom. Forsyth v. Vines*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) (holding that summary judgment is appropriate where the nonmovant rests merely upon conclusory allegations, improbable inferences, and unsupported speculation); *Resolution Trust Corporation v. Camp*, 965 F.2d 25, 29 (5th Cir.1992), (holding that the party opposing summary judgment must do more than merely suggest possible error in the movant's summary judgment evidence; he must submit facts which demonstrate that the movant's summary judgment evidence is questionable or that the movant's allegations are not properly supported); *Hanks v. Transcontinental Gas Pipe Line Corp.*,

to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim.[49] Rule 56 does not require the district court to sift through the record in search of evidence to support a nonmovant's opposition to summary judgment.[50] If he is unable to present affirmative evidence with his response to the motion, the nonmoving party must explain the reasons for his inability.[51] All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment.[52] However, there must be evidence in the record giving rise to reasonable inferences that support the non-moving party's position.[53] The Court cannot assume, in the absence of any proof, that the nonmoving party could or would prove the necessary facts.[54]

▉ While plaintiff has filed numerous motions requesting discovery from various employees of the Connally Unit mail room and law library, as well as information in the custody of officials in Bee County, Texas, plaintiff has failed to furnish this Court with any rational explanation as to how any of this information is relevant to the issues raised by defendant's motion for summary judgment herein. Plaintiff does not explain how any information in the custody of the law library or mail room at the Connally Unit will help resolve the issue of whether the plaintiff ever complied with applicable state law in his submissions to the Karnes County District Clerk. Likewise, plaintiff's constitutional claims are premised upon assertions that the defendant was constitutionally obligated to furnish plaintiff with legal advise both explaining precisely how plaintiff's submissions failed to satisfy applicable state law and indicating the exact steps plaintiff could take to cure those same filing defects. As explained at length hereinafter, plaintiff's federal constitutional claims, as well as his request for mandamus relief, are legally frivolous. Under such circumstances, plaintiff is not entitled to discovery from non-parties or to an open-ended continuance to permit him to seek irrelevant information and materials.

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at

953 F.2d at 997; *Lechuga v. Southern Pacific Transportation Company*, 949 F.2d at 794; *Reese v. Anderson*, 926 F.2d at 498–99; and *Fontenot v. Upjohn Co.*, 780 F.2d at 1195.

49. See *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Forsyth v. Barr*, 19 F.3d at 1537; and *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

50. See *Forsyth v. Barr*, 19 F.3d at 1537; and *Skotak v. Tenneco Resins, Inc.*, 953 F.2d at 915 n. 7.

51. See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1396–97 (5th Cir.1994); *Cormier v. Pennzoil*, 969 F.2d at 1561; *Reese v. Anderson*, 926 F.2d at 499 & n. 5, (holding that general allegations of a need for additional discovery will not suffice; the person presenting such a claim must show what discovery has been obtained, why it is inadequate, and the what additional information he expects to obtain from additional discovery); *Fontenot v. Upjohn Co.*, 780 F.2d at 1195; and Fed.R.Civ.P. 56(f).

52. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d at 853; *Stults v.. Conoco, Inc.*, 76 F.3d at 654; *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1078 (5th Cir.1995), *cert. denied*,

516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); *Elliott v. Lynn*, 38 F.3d 188, 190, (5th Cir.1994), *cert. denied*, 514 U.S. 1117, 115 S.Ct. 1976, 131 L.Ed.2d 865 (1995); *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir. 1994); *Hibernia National Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

53. *Stults v. Conoco, Inc.*, 76 F.3d at 654–55, (holding that only materials which were included in the pretrial record and that would have been admissible evidence may be considered); *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995), *cert. denied*, 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995). See also *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *revised on rehearing*, 70 F.3d 26 (5th Cir.1995): "we resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." A mere scintilla of evidence is insufficient to present a question for the jury. See *Foreman v. Babcock & Wilcox Company*, 117 F.3d 800, 804 (5th Cir.1997).

54. See *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d at 92; and *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994).

trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him.[55] However, Rule 56 does *not* require that discovery take place before the Court may grant a summary judgment.[56] "The notice requirement of Rule 56(c) is not a license for a fishing expedition for evidence."[57] To be entitled to a continuance of a summary judgment proceeding in order to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable him to rebut the movant's allegations of no genuine issue of material fact.[58] If a party cannot adequately defend against a motion for summary judgment, the party's remedy is a motion for relief under Rule 56(f), Fed.R.Civ.P.; however, only parties that have diligently pursued discovery are entitled to the protection afforded by Rule 56(f).[59] Plaintiff has not presented this court with any specific factual allegations establishing that either he has diligently sought any *relevant* information that could help him oppose defendant's motion for summary judgment or there exists any information that could him establish the non-frivolous nature of his constitutional claims herein.

When summary judgment is inappropriate because supporting or opposing materials are improper, a district court has the discretion to call upon the parties to remedy defects by supplementing affidavits or otherwise.[60] Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit Court of Appeals, has never allowed such litigants to oppose summary judgments by the use of

**55.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir. 1992); *Fontenot v. Upjohn Co.,* 780 F.2d at 1194–95.

**56.** *See United States v. Bloom,* 112 F.3d 200, 205 n. 17 (5th Cir.1997); *Cormier v. Pennzoil,* 969 F.2d at 1561; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 28 F.3d 1388, 1396 (5th Cir.1994); *Rosas v. U.S. Small Business Administration,* 964 F.2d 351, 359 (5th Cir.1992); and *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990), (holding that the Court may cut off discovery prior to a ruling on a motion for summary judgment where the record indicates that further discovery will not likely produce facts necessary to defeat the motion); *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992), (holding that the nonmoving party must show how additional discovery will defeat the summary judgment motion, i.e., create a genuine dispute as to a material fact and that the nonmoving party must show that he has diligently pursued discovery of the evidence in question); and *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir.1991).

**57.** *Nowlin v. Resolution Trust Corporation,* 33 F.3d 498, 505 (5th Cir.1994).

**58.** *See United States v. Bloom,* 112 F.3d at 205 n. 17; *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir.1997); *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.,* 48 F.3d 927, 930 (5th Cir.1995); *Exxon Corporation v. Crosby–Mississippi Resources, Ltd.,* 40 F.3d 1474, 1487 (5th Cir.1995); *King v. Dogan,* 31 F.3d at 346; *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 918 (5th Cir.1992), *cert. denied,* 508 U.S. 910, 113 S.Ct. 2340, 124 L.Ed.2d 251 (1993); *Cormier v. Pennzoil,* 969 F.2d at 1561; *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d at 1267, (holding that the nonmoving party must show how additional discovery will defeat the summary judgment motion, i.e., create a genuine dispute as to a material fact and that the nonmoving party must show that he has diligently pursued discovery of the evidence in question); *McCarty v. United States,* 929 F.2d at 1088; and *Reese v. Anderson,* 926 F.2d at 499 & n. 5.

To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact. The nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."
*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 28 F.3d at 1395, *quoting Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993).

**59.** *See 7547 Corp. v. Parker & Parsley Development Partners,* 38 F.3d 211, 220 (5th Cir.1994); and *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 28 F.3d at 1396–97.

**60.** *Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir.1981); *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980).

unsworn materials.[61] Unsworn pleadings do *not* satisfy Rule 56(e)'s requirements for summary judgment proof.[62] In order for *verified* pleadings to constitute proper summary judgment proof, they must conform to the requirements of affidavits, i.e., they must establish the affiant's competency to testify to the matters in question, be based upon personal knowledge, and contain a clear explication of factual information that would be admissible at trial, not mere unsupported conclusions.[63] A summary assertion made in an affidavit is simply not enough to raise a genuine issue of material fact.[64] The Fifth Circuit has repeatedly rejected efforts to oppose summary judgment with improper documents.[65] Unauthenticated documents simply do not constitute proper summary judgment evidence.[66]

▮▮▮▮ In order to constitute proper summary judgment proof, affidavits must affirmatively show the affiant's competence to testify as to the matters stated therein and that the *facts* stated in the affidavits are based in the affiant's personal knowl-

**61.** *See King v. Dogan*, 31 F.3d at 346, (refusing to permit a *pro se* litigant to rely upon an unverified pleading and unauthenticated documents to defeat the defendant's motion for summary judgment); *Barker v. Norman*, 651 F.2d at 1123; and *Gordon v. Watson*, 622 F.2d at 123.

**62.** *See Wallace v. Texas Tech University*, 80 F.3d at 1047; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075. (5th Cir.1994); *King v. Dogan*, 31 F.3d at 346; *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991); and *Gordon v. Watson*, 622 F.2d at 123. The filing of an unverified amended complaint renders a verified original complaint a nullity unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleadings. *King v. Dogan*, 31 F.3d at 346; and *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985).

**63.** *See King v. Dogan*, 31 F.3d at 346, (holding that a verified complaint can be considered as summary judgment evidence only to the extent that it comports with the requirements of Rule 56(e)); *Salas v. Carpenter*, 980 F.2d at 304–05, and *Cormier v. Pennzoil*, 969 F.2d at 1561, (both holding that a court may not consider hearsay contained in an affidavit when ruling on a summary judgment motion); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d at 997; *Lechuga v. Southern Pacific Transportation Company*, 949 F.2d at 794; *Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 225 (5th Cir.1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment); *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 194; and *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d at 80. If these requirements are met, verified pleadings can be considered as summary judgment evidence. *See RTC v. Starkey*, 41 F.3d 1018, 1024 (5th Cir.1995).

**64.** *Melton v. Teachers Insurance & Annuity Association*, 114 F.3d 557, 559 (5th Cir.1997); *Hibernia National Bank v. Carner*, 997 F.2d 94, 98 (5th Cir.1993). The non-moving party must set forth specific facts to establish that there is a genuine issue for trial, but where the evidential submissions lack probative value as to a genuine issue, summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2511; *Melton v. Teachers Insurance & Annuity Association*, 114 F.3d at 559; and *Hibernia National Bank v. Carner*, 997 F.2d at 97–98.

**65.** *See King v. Dogan*, 31 F.3d at 346, (holding that unverified pleadings and unauthenticated documents did not constitute proper summary judgment evidence); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994), (holding that unsworn pleadings do not constitute proper summary judgment evidence); *Salas v. Carpenter*, 980 F.2d at 305, (holding that only those portions of an expert witness's affidavit that provided *admissible* opinion evidence could be considered for summary judgment purposes); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991), (holding that a nonmovant could not oppose a summary judgment motion with an unauthenticated letter); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987), (holding that a district court may not consider either hearsay evidence in affidavits or unsworn documents in a summary judgment proceeding); *Meserole v. M/V Fina Belgique*, 736 F.2d 147, 149 (5th Cir.1984), (holding that an unsworn letter is not proper summary judgment proof); and *Jones v. Menard*, 559 F.2d 1282, 1285 n. 5 (5th Cir.1977), (holding that a written report drafted by a person who is not properly qualified as an expert may not be considered as summary judgment evidence). *See also E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 341 n. 2 (5th Cir.1982); and *Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d at 225, (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment).

**66.** *See King v. Dogan*, 31 F.3d at 346, (holding that unverified pleadings and unauthenticated documents did not constitute proper summary judgment evidence); and *Duplantis v. Shell Offshore, Inc.*, 948 F.2d at 192, (holding that a nonmovant could not oppose a summary judgment motion with an unauthenticated letter).

edge.[67] Unsubstantiated assertions are not competent summary judgment evidence; summary judgment is appropriate where the nonmovant relies upon conclusory allegations, improbable inferences, and unsupported speculation.[68] Conjecture and unverified assertions made before the Court are not a specific showing of solid evidence to shield one from summary judgment.[69]

## C. *Plaintiff's Requests for Mandamus Relief*

### 1. *Mandamus Jurisdiction*

 The initial problem with plaintiff's request for mandamus relief from this Court is that federal district courts are courts of limited statutory jurisdiction and they may not hear claims without jurisdiction conferred by a statute.[70] The only federal statute conferring the authority to issue writs of mandamus upon the federal district courts is Title 28 U.S.C. Section 1361, which specifically provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of *the United States or any agency thereof* to perform a duty owed to the plaintiff."[71] The defendant is the elected District Clerk of Karnes County, Texas, *not* a federal officer, agent, or employee and, as such, is *not* subject to the statutory mandamus authority of this Court. Thus, this Court lacks jurisdiction to entertain plaintiff's request for mandamus relief against the defendant.

### 2. *Abstention*

 The second problem with plaintiff's request that this Court review the defendant's decision not to file plaintiff's submissions of July, 1996 is that insofar as plaintiff complains that the defendant failed to properly apply applicable state statutes, those claims do not furnish a basis for federal relief. Federal District Courts lack jurisdiction to entertain collateral attacks upon state court judgments.[72] Plaintiff's claims herein amount to little more than a collateral attack upon a decision by a state district clerk to refrain from filing plaintiff's proposed state civil lawsuit. While not accompanied by a final Judgment from a court, the actions of the defendant about which plaintiff complains herein amount to nothing less than a complete and total rejection of the claims raised by plaintiff in his proposed state civil lawsuit, albeit in a manner that denied without prejudice the plaintiff's claims in his proposed state lawsuit. As such, any constitutional questions raised by the defendant's rejection of plaintiff's submissions *based on the defendant's interpretation of applicable state law* amount to little more than collateral attacks upon a state court action, review of which by this Court is foreclosed by well-settled principles of ab-

---

**67.** See *Isquith v. Middle South Utilities, Inc.,* 847 F.2d at 194; *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d at 80; (holding that Rule 56(e) requires that summary judgment affidavits be based upon personal knowledge, contain admissible evidence, and affirmatively demonstrate the competency of the affiant to testify as to the matters contained therein); *Barker v. Norman,* 651 F.2d at 1123; and *Fed.R.Civ.P.* 56(e). *See also Cormier v. Pennzoil,* 969 F.2d at 1561, (holding that a court may not consider hearsay contained in an affidavit when ruling on a summary judgment motion).

**68.** See *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d at 92: "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."; *Douglass v. United Services Automobile Association,* 65 F.3d 452, 459 (5th Cir.1995); *Quest Exploration &*

Development Company v. Transco Energy Company, 24 F.3d 738, 741 (5th Cir.1994); *Forsyth v. Barr,* 19 F.3d at 1533; and *Krim v. BancTexas Group, Inc.,* 989 F.2d at 1449.

**69.** See *Nowlin v. Resolution Trust Corporation,* 33 F.3d at 505.

**70.** See *Dunn–McCampbell Royalty Interest,.Inc. v. National Park Service,* 112 F.3d 1283, 1286 (5th Cir.1997); and *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994).

**71.** *Dunn–McCampbell Royalty Interest, Inc. v. National Park Service,* 112 F.3d at 1288, quoting 28 U.S.C. § 1361 (emphasis added).

**72.** See *Musslewhite v. State Bar of Texas,* 32 F.3d 942, 946 (5th Cir.1994), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995); and *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir.1994), *cert. denied,* 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994).

stention.[73] If the defendant erred in her application of state law, then the plaintiff's remedy was to seek review from a state appellate court, possibly through a petition for writ of mandamus filed in an appropriate state appellate court, *not* a federal civil rights lawsuit filed in this Court.

### 3. Federal Civil Rights Claims and State Statutes

 Insofar as plaintiff's *pro se* pleadings in this lawsuit can be construed as asserting claims for injunctive relief under the federal civil rights statutes based upon the defendant's alleged failure to comply with applicable provisions of the Texas Rules of Civil Procedure and the Texas Civil Practice and Remedies Code, those claims are legally frivolous. Absent some showing that the defendant violated plaintiffs' *constitutional* rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983.[74] Thus, insofar as plaintiff alleges merely that the defendant failed to comply with applicable Texas statutes, those allegations, standing alone, do not provide even an arguable basis for either recovery of monetary damages or a finding that plaintiff is entitled to injunctive or declaratory relief under Section 1983.

### 4. Compliance with Texas Inmate Filing Prerequisites

Finally, even if this Court were explore the plaintiff's entitlement to mandamus relief under applicable state statutes, it is clear from the proper summary judgment evidence now before this Court that plaintiff wholly failed to comply with the applicable provisions of the Texas Civil Practice and Remedies Code when he submitted his proposed state civil lawsuit to the defendant in July, 1996.

Effective June 5, 1995, the Texas Legislature enacted Chapter 14 of the Texas Civil Practice and Remedies Code which, like the federal Prison Litigation Reform Act of 1996 ["PLRA"],[75] addresses the filing of most civil lawsuits by inmates in the state courts of Texas.[76] The federal PLRA requires a prisoner requesting leave to proceed In Forma Pauperis to furnish federal courts with detailed financial information sufficient to allow the federal courts to calculate the average monthly balance and average monthly deposits in the prisoner's inmate trust account for the past six months and requires federal courts to impose initial partial filing fees and other financial duties upon prisoners proceeding In Forma Pauperis.[77] In a similar

---

**73.** *See Liedtke v. State Bar of Texas,* 18 F.3d at 317.

**74.** *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir.1996), (holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn,* 48 F.3d 908, 912 (5th Cir.1995), *cert. denied,* 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995), (holding that a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process); *Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir.1994), (holding that a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 760, 112 L.Ed.2d 779 (1991), (holding that alleged violations of a state statute did not give rise to federal constitutional claims); *Jackson v. Cain,* 864 F.2d 1235, 1251 (5th Cir.1989), ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because

'constitutional minima' may nevertheless have been met.' "); and *Brown v. Texas A & M University,* 804 F.2d 327, 335 (5th Cir.1986), (holding that a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).

**75.** Pub.L. No. 104–134, 110 Stat. 1321.

**76.** Chapter 14 specifically excludes actions brought under the Texas Family Code. *See* Section 14.002(b), Texas Civil Practice and Remedies Code Annotated (Vernon Supp.1997).

**77.** *See Ayo v. Bathey,* 106 F.3d at 100, (holding that the financial responsibility provisions of the PLRA require a prisoner seeking leave to proceed In Forma Pauperis to file an affidavit listing his assets and to submit a certified copy of his inmate trust fund account statement or an institutional equivalent reflecting the six-month period immediately preceding the filing of the complaint even with regard to a case in which In Forma Pauperis status was granted prior to the effective date of the PLRA, i.e., April 26, 1996); *Strickland v. Rankin County Correctional Facility,*

manner, Chapter 14 of the Texas Civil Practice and Remedies Code requires a Texas prisoner seeking to file a new civil lawsuit in the state courts In Forma Pauperis to furnish the state court with detailed financial information, including a certified copy of the prisoner's inmate trust account statement.[78] Chapter 14 also authorizes state courts to impose costs and partial filing fees upon inmates proceeding In Forma Pauperis in a manner remarkably similar to that provided for in the PLRA.[79]

Even more significantly for this case is the provision of Chapter 14 of the Texas Civil Practice and Remedies Code which, like Title 28 U.S.C. Section 1915(e)(2), authorizes state courts to dismiss actions filed by inmates proceeding In Forma Pauperis based upon a finding that either (1) the inmate's allegation of poverty is untrue or his financial affidavit is false, (2) the inmate's claims are either frivolous or malicious, or (3) the inmate knowingly filed a false declaration of inability to pay costs or of his prior litigation history.[80] Chapter 14 specifically provides that, in determining whether a claim is frivolous or malicious, the state court may consider (1) the likelihood of the claim's success on the merits, (2) whether the claim has an arguable basis in law or fact, (3) whether the inmate can prove a set of facts in support of the claim, and (4) *whether the claim is substan-*

*tially similar to a previous claim filed by the same inmate.*[81] In furtherance of this authorization, Chapter 14 requires inmates proceeding In Forma Pauperis in the Texas courts to file a *separate* affidavit or sworn declaration (1) identifying each suit, other than actions brought pursuant to the Texas Family Code, previously filed by the inmate *pro se*, regardless of whether the plaintiff was an inmate at the time he filed that action, and (2) *describing each such suit,* including identifying (a) the operative facts of the suit, (b) the case style, cause number, and court in which the suit was filed, (c) all parties named in the suit, and (d) the result of the suit, including whether it was dismissed as frivolous or malicious and, if so, the date of the final order of dismissal.[82] In essence, inmates proceeding In Forma Pauperis in the courts of Texas are required to furnish the state courts with detailed information from which those courts can determine whether the claims asserted by the inmate are barred as frivolous or malicious by applicable state law. This requirement is consistent with the practice in this Court, in which prisoners filing federal civil rights lawsuits are routinely directed to complete detailed questionnaires designed to elicit from them both the factual bases for their claims and detailed information regarding the prisoner's previous litigation history.[83]

---

78. *See* Sections 14.004(c) and 14.006(f), Texas Civil Practice and Remedies Code Annotated (Vernon Supp.1997).

79. *See* Section 14.006, Texas Civil Practice and Remedies Code Annotated (Vernon Supp.1997).

80. *See* Section 14.003(a), Texas Civil Practice and Remedies Code Annotated (Vernon Supp. 1997).

81. *See* Section 14.003(b), Texas Civil Practice and Remedies Code Annotated (Vernon Supp. 1997).

82. *See* Sections 14.004(a) and 14.004(b), Texas Civil Practice and Remedies Code Annotated (Vernon Supp.1997).

83. In fact, this Court's questionnaire in this very case was designed to accomplish those same goals. *See* docket entry no. 8. The authority of federal district courts to issue such Orders directing prisoners and other *pro se* litigants to answer such questionnaires has been recognized by the

105 F.3d at 973, (holding the same); and *Adepegba v. Hammons*, 103 F.3d at 384–87, (holding that the PLRA's "three strikes" provision applied to an appeal pending prior to the effective date of the PLRA and authorized denial of In Forma Pauperis status based on lawsuits and appeals dismissed as frivolous prior to the effective date of the PLRA). The PLRA imposes considerable barriers to the filing of new civil lawsuits and appeals by prisoners seeking to proceed In Forma Pauperis in the federal courts. *See Ayo v. Bathey*, 106 F.3d at 100, and 28 U.S.C. § 1915(a)(2). In addition, the PLRA, i.e., § 1915(b), also requires a prisoner who proceeds In Forma Pauperis to pay the full amount of the filing fee, which may be collected in installments withdrawn from the prisoner's inmate trust fund account. *Ayo v. Bathey*, 106 F.3d at 100. "The fee provisions of the PLRA were designed to deter frivolous prisoner litigation in the courts 'by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.' " *Jackson v. Stinnett*, 102 F.3d at 136–37. *Accord Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir.1997).

██ ˙ Plaintiff neither attached to his original pleading in this lawsuit nor submitted in any form any documents that he represented to be true and correct copies· of the documents that he submitted to the defendant in July or August, 1996. Plaintiff avers in both his original pleading, his answers to this Court's questionnaire, and in his response to defendant's motion for summary judgment that he received a notice from the defendant on or about July 10, 1996 indicating that his proposed civil lawsuit did not conform to Sections 14.001 et seq. of the Texas Civil Practice and Remedies Code.[84] Plaintiff also avers that on July 15, 1996, he re-submitted to the defendant his original proposed state civil lawsuit and requested that the defendant advise him of any defects therein as·well as furnish plaintiff with directions on how to cure any such defects. However, nowhere in any of the plaintiff's verified pleadings in this cause or in any of the attachments thereto does plaintiff allege that he ever submitted to the defendant a separate declaration regarding plaintiff's previous lawsuits containing all of the information required by Section 14.004 of the Texas Civil Practice and Remedies Code. Simply put, nowhere in any of plaintiff's sworn pleadings or the other proper summary judgment evidence now before this Court does plaintiff indicate that he *ever* submitted to the defendant a *separate* declaration containing *all* of the detailed information concerning his previous lawsuits that is required by Section 14.004. Relying upon Rule 24 of the Texas Rules of Civil Procedure, plaintiff argues that the defendant failed to fulfill a purely ministerial task, i.e.,

the filing of his proposed state civil lawsuit in July and August, 1996. However, even a cursory review of Rule 24, Tex.R.Civ.P., reveals that nothing in that state procedural rule required the defendant to file a submission that was clearly deficient under Chapter 14 of the Texas Civil Practice and Remedies Code.[85]

### 5. *Synthesis*

For the foregoing reasons, plaintiff is *not* entitled to a writ of mandamus from this Court directing the defendant to file plaintiff's submissions of July and August, 1996. Therefore, defendant's motion for summary judgment with regard to plaintiff's claims for mandamus relief must be granted.

### D. *Claims for Monetary Damages and Injunctive Relief*

In his answers to this Court's questionnaire and supplemental complaint,[86] plaintiff requests both injunctive relief and monetary damages from the˙defendant in both her individual and official capacities. Pursuant to the PLRA, this Court is authorized to conduct a *sua sponte* examination of whether the plaintiff's claims for monetary damages and injunctive relief are legally frivolous.

### 1. *Standard for Review Under Section 1915(e)(2)(B)*

At one time, the˙district courts in this Circuit were prohibited from dismissing as frivolous a civil complaint in any proceeding in which the plaintiff had paid any portion of the filing fee.[87] However, when Congress enacted the Prison Litigation Reform Act of

---

Fifth Circuit in *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir.1994), *cert. denied*, 513 U.S. 883, 115 S.Ct. 220, 130 L.Ed.2d 147 (1994), and *Parker v. Carpenter*, 978 F.2d 190, 191 (5th Cir.1992).

84. ˙ *See* docket entry no. 12; Plaintiff's Questionnaire Answers, filed April 29, 1997, docket entry no. 23, at question 10; and Plaintiff's Response to Defendant's Motion for· Summary Judgment, filed August 18, 1997, docket entry no. 43.

85. Rule 24, Tex.R.Civ.P., provides only that "[w]hen a petition is filed with the clerk he shall indorse thereon the file number, the day on which it was filed and the time of filing, and sign his name official thereto." Nothing in that rule vitiates the statutory prerequisites to the filing of In Forma Pauperis lawsuits by inmates set forth in Chapter 14 of the Texas Civil Practice and

Remedies Code. Plaintiff's arguments to the contrary. are not supported by any citation to any authority whatsoever. Likewise without legal support are plaintiff's assertions that the defendant was required under Chapter 14 of the Texas Civil Practice and Remedies Code to furnish plaintiff with legal advice regarding the precise nature of each and every defect in plaintiff's submissions, and specific directions for how to cure same. Nothing in Chapter 14 or Rule 24, Tex.R.Civ.P., mandated that the defendant furnish plaintiff with legal advice of that nature.

86. *See* docket entry nos. 22 and 23.

87. *See Grissom v. Scott*, 934 F.2d 656, 657 (5th Cir.1991), (holding that dismissal of a complaint pursuant to former § 1915(d) [now § 1915(e)] is

1996 ["PLRA"], it specifically amended Title 28 U.S.C. Section 1915(e)(2)(B)(i) to provide that a complaint filed by a prisoner could be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. Therefore, plaintiff's claims herein are subject to review under Section 1915(e) and dismissal as frivolous regardless of whether he paid any portion of the filing fee in this cause.

Title 28 U.S.C. Section 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose

factual contentions are clearly baseless.[88] In an action filed *in forma pauperis,* a court may raise *sua sponte* the issue of whether an action is malicious or frivolous under Section 1915(e).[89] Dismissal of a claim as frivolous under Section 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact.[90] Typical examples of claims which can be dismissed pursuant to Section 1915(e) include (1) claims against which it is clear that the defendants are immune from suit,[91] (2) claims of infringement of a legal interest that clearly does not exist,[92] and (3) claims which are barred by limitations.[93]

In reviewing a complaint under Section 1915(e), a court is *not* bound to ac-

---

*not* appropriate where a plaintiff has made a partial payment of filing fees and that, in such cases, the Court must treat the complaint in the same manner as one for which In Forma Pauperis status has *not* been granted).

**88.** *See Denton v. Hernandez,* 504 U.S. 25, 31–32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989); and *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995). The Prison Litigation Reform Act of 1996, effective April 26, 1996, moved the relevant statutory provision addressing dismissal for frivolousness from former subsection (d) of Section 1915 to new subsection (e)(2)(B) and expanded the scope of that statute to expressly authorize dismissals of lawsuits as frivolous regardless of whether a filing fee or any portion thereof had been paid. *See Jackson v. Stinnett,* 102 F.3d 132, 136–37 (5th Cir.1996); and 28 U.S.C. § 1915(e)(2)(B)(i).

**89.** *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833; and *Schultea v. Wood,* 47 F.3d at 1434.

**90.** *See Neitzke v. Williams,* 490 U.S. at 325, 109 S.Ct. at 1831; *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997), (holding that Title 42 U.S.C. § 1997e(e) requires proof of a physical injury before a prisoner can recover for emotional or mental distress, holding that verbal abuse is not actionable under Section 1983, and also recognizing a de minimus standard for 8th Amendment excessive force claims); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997); *Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir.1995); *Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir. 1995); *Boyd v. Biggers,* 31 F.3d 279, 281 (5th Cir.1994); *Eason v. Thaler,* 14 F.3d 8, 9 (5th Cir.1994); *Booker v. Koonce,* 2 F.3d 114, 116 (5th Cir.1993); *Thompson v. Patteson,* 985 F.2d 202, 205 (5th Cir.1993); *Parker v. Carpenter,* 978 F.2d 190, 191 n. 1 (5th Cir.1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir.1992); *Henthorn v. Swinson,* 955 F.2d 351, 352 (5th Cir.1992), *cert. denied,* 504 U.S. 988, 112 S.Ct.

2974, 119 L.Ed.2d 593 (1992); *Wilson v. Barrientos,* 926 F.2d 480, 482 (5th Cir.1991); *Henson–El v. Rogers,* 923 F.2d 51, 53 (5th Cir.1991), *cert. denied,* 501 U.S. 1235, 111 S.Ct. 2863, 115 L.Ed.2d 1030 (1991); *Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir.1990); *Williams v. Luna,* 909 F.2d 121, 123 (5th Cir.1990); *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.1989), *cert. denied,* 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989); and *Pugh v. Parish of St. Tammany,* 875 F.2d 436, 438 (5th Cir.1989).

**91.** *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833. *See also Krueger v. Reimer,* 66 F.3d at 76–77, and *Boyd v. Biggers,* 31 F.3d at 284–85, (both upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity).

**92.** *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833; *Siglar v. Hightower,* 112 F.3d at 193, (holding that Title 42 U.S.C. § 1997e(e) requires proof of a physical injury before a prisoner can recover for emotional or mental distress and that verbal abuse is not actionable under Section 1983); *Hicks v. Garner,* 69 F.3d 22, 25 (5th Cir.1995), (holding that a state prisoner possessed no constitutionally-protected right to grow a beard or his hair long); *Biliski v. Harborth,* 55 F.3d at 162, (holding that a state prisoner's equal protection claims arising out of his being housed at a County jail did not invoke any federal constitutional rights); and *Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir.1992), (affirming the dismissal as frivolous of a claim by a convicted prisoner that he had been denied the opportunity to attend religious and educational classes with the general inmate population based upon his diagnosis as a mental patient).

**93.** *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir.1994); *Gartrell v. Gaylor,* 981 F.2d 254, 259 (5th Cir.1993); and *Henson–El v. Rogers,* 923 F.2d at 53.

cept without question the truth of the plaintiff's allegations.[94] A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.[95] A district court may dismiss an in forma pauperis proceeding as frivolous under 28 U.S.C. § 1915(e) whenever it appears that the claim has no arguable basis in law or fact.[96] In an action proceeding under Section 1915(e), a federal court may consider *sua sponte* affirmative defenses that are apparent from the record even where they have not been addressed or raised in the pleadings on file.[97] Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of an answer.[98]

■■■ A case is not frivolous simply because it fails to state a claim.[99] However, if the claim has no arguable basis in law or

fact, the complaint can be dismissed under Section 1915(e).[100] "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal theory.'"[101] An *in forma pauperis* complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under Section 1915(e).[102] Furthermore, when it is clear from the face of the complaint that the claims asserted are subject to an obvious meritorious defense, such as a peremptory time bar, dismissal with prejudice is appropriate.[103]

2. *Monetary Damage Claims Against the Defendant, Individually*

a. *Qualified Immunity*

■■■ As a public official performing a discretionary task, the defendant is entitled to the protection afforded by the defense of qualified immunity. While the plaintiff argued in connection with his request for man-

---

**94.** *Denton v. Hernandez,* 504 U.S. at 32, 112 S.Ct. at 1733; and *Ancar v. Sara Plasma, Inc.,* 964 F.2d at 468.

**95.** *Denton v. Hernandez,* 504 U.S. at 32–33, 112 S.Ct at 1733; and *Gartrell v. Gaylor,* 981 F.2d at 259.

**96.** *Henson–El v. Rogers,* 923 F.2d at 53. *See also McCormick v. Stalder,* 105 F.3d at 1061, (dismissing as frivolous a prisoner's complaint that he was forced to undergo medical treatment for Tuberculosis while incarcerated); *Thompson v. Patteson,* 985 F.2d at 205; *Gartrell v. Gaylor,* 981 F.2d at 259; and *Henthorn v. Swinson,* 955 F.2d at 352.

In the course of making that determination, the court may employ an evidentiary hearing as suggested by the Fifth Circuit's opinion in *Spears v. McCotter,* 766 F.2d 179, 180–81 (5th Cir.1985), or a questionnaire, as suggested by the Fifth Circuit's opinions in *Macias v. Raul A.,* 23 F.3d 94, 97 (5th Cir.1994), cert. denied, 513 U.S. 883, 115 S.Ct. 220, 130 L.Ed.2d 147 (1994), and *Parker v. Carpenter,* 978 F.2d 190, 191 (5th Cir. 1992). This Court's questionnaire to plaintiff was designed to comply with the foregoing suggestions. Regardless of the procedure used, however, the court must ensure that the evidence it considers is authentic and reliable. *See Wilson v. Barrientos,* 926 F.2d at 483. A plaintiff's testimony at a *Spears* hearing and his answers to the court's questionnaire become a part of the total filing by the *pro se* plaintiff. *See Eason v. Holt,* 73 F.3d 600, 603 (5th Cir.1996).

**97.** *See Schultea v. Wood,* 47 F.3d at 1434, (recognizing the authority of the district court to dismiss an action pursuant to § 1915(d) based on the doctrine of qualified immunity); *Gartrell v. Gaylor,* 981 F.2d at 259; *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir.1990); and *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989).

**98.** *Id.*

**99.** *Neitzke v. Williams,* 490 U.S. 319, 331, 109 S.Ct. 1827, 1834, 104 L.Ed.2d 338 (1989); *Booker v. Koonce,* 2 F.3d at 115; *Gartrell v. Gaylor,* 981 F.2d at 259; and *Ancar v. Sara Plasma, Inc.,* 964 F.2d at 468.

**100.** *See Gartrell v. Gaylor,* 981 F.2d at 259; *Parker v. Carpenter,* 978 F.2d at 191 n. 1; and *Mayfield v. Collins,* 918 F.2d 560, 561 (5th Cir. 1990).

**101.** *Boyd v. Biggers,* 31 F.3d at 281–82, quoting *Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833.

**102.** *See Ancar v. Sara Plasma, Inc.,* 964 F.2d at 468, (suggesting that complaints that are clearly baseless include those which describe fanciful, fantastic, or delusional scenarios); and *Wesson v. Oglesby,* 910 F.2d at 281. *See also Gartrell v. Gaylor,* 981 F.2d at 259.

**103.** *See Graves v. Hampton,* 1 F.3d 315, 319–20 (5th Cir.1993).

damus relief above that the defendant had failed to perform a purely ministerial task, the plaintiff was *not* entitled to mandamus relief because, under clear and unambiguous state statutes, the plaintiff's submissions to the defendant in July and August, 1996 were legally deficient. The review of proposed civil lawsuits to ascertain whether those submissions comply with the prerequisites contained in Chapter 14 of the Texas Civil Practice and Remedies Code necessarily requires the exercise of discretion on the part of the reviewing official. Thus, the defendant is entitled to the defense of qualified immunity with regard to the plaintiff's claims for monetary damages against the defendant in her individual capacity. The defense of qualified immunity recognized in *Harlow v. Fitzgerald*[104] is a product of the genius of the common law. It is neither a complete barrier to recovery nor a true affirmative defense. Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.

■ A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense.[105] Once a government official or employee has asserted qualified immunity

and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does *not* bar recovery.[106] An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.[107] An official acts within the scope of his authority if he discharges the duties generally assigned to him.[108] In rejecting plaintiff's non-conforming submissions in July and August, 1996, the defendant was acting well within the scope of her discretionary authority.

■ The Supreme Court and the Fifth Circuit have repeatedly admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability.[109] The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of § 1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery.[110] Once a defendant pleads qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were reasonable in light of the law that was clearly established at the

**104.** 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**105.** *Foster v. City of Lake Jackson,* 28 F.3d 425, 428 (5th Cir.1994); *Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir.1992); *Bennett v. City of Grand Prairie,* 883 F.2d 400, 408 (5th Cir.1989); *Whatley v. Philo,* 817 F.2d 19, 20 (5th Cir.1987).

**106.** *See Todd v. Hawk,* 72 F.3d 443, 446 (5th Cir.1995); *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d at 306; *United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1310 (5th Cir.1987), *cert. denied sub nom. Wolin v. United States,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Saldana v. Garza,* 684 F.2d 1159, 1163 n. 14 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

**107.** *See Tamez v. City of San Marcos, Texas,* 118 F.3d 1085, 1091–92 (5th Cir.1997); and *Cronen v. Texas Department of Human Services,* 977 F.2d 934, 939 (5th Cir.1992).

**108.** *See Tamez v. City of San Marcos, Texas,* 118 F.3d at 1091–92.

**109.** *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Salas v. Carpenter,* 980 F.2d at 305; *Jackson v. City of Beaumont Police Department,* 958 F.2d 616, 620 (5th Cir.1992), (holding that one of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit); *Gaines v. Davis,* 928 F.2d 705, 706–07 (5th Cir.1991); *Streetman v. Jordan,* 918 F.2d 555, 556 (5th Cir.1990); *Brown v. Glossip,* 878 F.2d 871, 874 (5th Cir.1989); and *Helton v. Clements,* 787 F.2d 1016, 1017 (5th Cir.1986).

**110.** *See Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. at 526–27, 105 S.Ct. at 2815–16; *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738; *Jackson v. City of Beaumont Police Department,* 958 F.2d at 620; *Gaines v. Davis,* 928 F.2d at 707; *Streetman v. Jordan,* 918 F.2d at 556–57; and *James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990).

time the contested action occurred; until this threshold is resolved, discovery should not be allowed.[111] Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a constitutionally-protected right.[112] If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions.[113]

■ The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity;[114] and (2) permit limited discovery pending disposition of the qualified immunity issue only in those situations in which the specific *facts* contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qual-

ified immunity.[115] This heightened pleading requirement applies to *pro se* litigants.[116]

"[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense."[117] A complaint which raises the likely issue of immunity cannot be cast in "broad, indefinite and conclusory terms," but must include detailed facts supporting the contention that the plea of immunity cannot be sustained.[118] Discovery related to the applicability of qualified immunity is appropriate *only* when factual issues exist as to the applicability of qualified immunity.[119]

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[120] If reasonable public officials

**111.** *See Siegert v. Gilley*, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

**112.** *Foster v. City of Lake Jackson*, 28 F.3d at 428; and *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir.1993).

**113.** *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994); *Rankin v. Klevenhagen*, 5 F.3d at 108; and *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir.1993): "The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation—we look to the clearly established law at that time."

**114.** *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d at 1430; *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Streetman v. Jordan*, 918 F.2d at 556–57; *Brown v. Glossip*, 878 F.2d at 874; *Geter v. Fortenberry*, 849 F.2d 1550, 1553–54 (5th Cir.1988); *Jacquez v. Procunier*, 801 F.2d 789, 791–93 (5th Cir.1986); and *Elliott v. Perez*, 751 F.2d 1472, 1480–82 (5th Cir.1985).

**115.** *See Gaines v. Davis*, 928 F.2d at 707; *Brown v. Glossip*, 878 F.2d at 874 n. 5; *Geter v. Fortenberry*, 849 F.2d at 1559–60; and *Lion Boulos v. Wilson*, 834 F.2d 504, 507–09 (5th Cir.1987).

**116.** *See Jackson v. City of Beaumont Police Department*, 958 F.2d at 621; and *Jacquez v. Procunier*, 801 F.2d at 793.

**117.** *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Nieto v. San Perlita ISD*, 894 F.2d 174, 177–78 (5th Cir.1990); and *Jacquez v. Procunier*, 801 F.2d at 791. *See also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994); and *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990), (holding that questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).

**118.** *Lion Boulos v. Wilson*, 834 F.2d at 509; *Elliott v. Perez*, 751 F.2d at 1479.

**119.** *See Gaines v. Davis*, 928 F.2d at 707; *Brown v. Glossip*, 878 F.2d at 874 n. 5; *Geter v. Fortenberry*, 849 F.2d at 1553–54; and *Lion Boulos v. Wilson*, 834 F.2d at 507–09.

**120.** *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Colle v. Brazos County, Texas*, 981 F.2d 237, 246 (5th Cir.1993); *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir.1991); *Bennett v. City of Grand Prairie, Texas*, 883 F.2d at 408; and *United States v. Burzynski Cancer Research Institute*, 819 F.2d at 1309.

could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.[121] Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question.[122] In a Section 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under *federal* law.[123] Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in the light of the legal rules that were "clearly established" at the time it was taken.[124] For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is

doing violates the right;" that is, "in the light of preexisting law the unlawfulness must be apparent." [125] While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions.[126] The Fifth Circuit has directed courts to examine only Supreme Court and Fifth Circuit precedent in the course of determining whether a legal principle is "clearly established;" the law of other Circuits does not control this determination.[127] The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.[128] For executive officers in general, qualified immunity is the norm.[129] In addition, merely negligent conduct on the part of a government official cannot meet the rather

**121.** *Johnston v. City of Houston*, 14 F.3d at 1059; *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990).

**122.** *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Johnston v. City of Houston*, 14 F.3d at 1059; *White v. Taylor*, 959 F.2d at 544.

**123.** *See Pierce v. Smith*, 117 F.3d 866, 871 n. 5 (5th Cir.1997).

**124.** *Anderson v. Creighton*, 483 U.S. at 639, 107 S.Ct. at 3038; *Salas v. Carpenter*, 980 F.2d at 310; *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 279–80 (5th Cir.1992); *Texas Faculty Association v. University of Texas at Dallas*, 946 F.2d 379, 389 (5th Cir.1991); *Pfannstiel v. City of Marion*, 918 F.2d at 1183; *Mouille v. City of Live Oak*, 918 F.2d 548, 552–53 (5th Cir.1990); *Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir.1990).

**125.** *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039; *Pierce v. Smith*, 117 F.3d at 871; *Salas v. Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992); *Bigford v. Taylor*, 896 F.2d at 974; *Brown v. Glossip*, 878 F.2d at 874. *See also Jackson v. City of Beaumont Police Department*, 958 F.2d at 620 (applying the Fourth Amendment test for excessive force by police officers that was in effect at the time of the incident made the basis of the plaintiff's complaint in a case in which the defendant pleaded the defense of qualified immunity).

**126.** *See Pierce v. Smith*, 117 F.3d at 871–72; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir.1996); *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1078 (5th Cir.1995), *cert. denied*, ―― U.S. ――, 116

S.Ct. 532, 133 L.Ed.2d 438 (1995); *Salas v. Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d at 544: "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity."; *Duckett v. City of Cedar Park, Texas*, 950 F.2d at 279–80; *Streetman v. Jordan*, 918 F.2d at 556; *Mouille v. City of Live Oak*, 918 F.2d at 552–53; and *Hopkins v. Stice*, 916 F.2d 1029, 1030–31 (5th Cir.1990). *See also Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir.1988), (holding that "clearly established" means the contours of the right were so clear at the time the officials acted that a reasonable official would have understood that what he was doing violated that right); and *Gunaca v. State of Texas*, 65 F.3d 467, 475 n. 7 (5th Cir.1995):

> The question " 'is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action was illegal.' "

**127.** *See Brady v. Fort Bend County*, 58 F.3d 173, 175–76 (5th Cir.1995); and *Boddie v. City of Columbus, Mississippi*, 989 F.2d 745, 748 (5th Cir.1993).

**128.** *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986); *Pierce v. Smith*, 117 F.3d at 871; *Baker v. Putnal*, 75 F.3d at 198; and *Brady v. Fort Bend County*, 58 F.3d at 174.

**129.** *See Brady v. Fort Bend County*, 58 F.3d at 174, *quoting Harlow v. Fitzgerald*, 457 U.S. at 807, 102 S.Ct. at 2732.

stringent standard for liability under Title 42 U.S.C. § 1983.[130]

■ Thus, in order to recover monetary damages from the defendant in her individual capacity, the plaintiff must establish not only that the defendant violated his constitutional rights but also that the defendant's conduct violated "clearly established" legal principles.

### b. Constitutional Claims

■ Plaintiff argues that the defendant's refusal to file his proposed state civil lawsuits in July and August, 1996 and the defendant's failure to specifically advise plaintiff as to each and every defect contained in plaintiff's submissions violated plaintiff's constitutional right of access to the courts and deprived plaintiff of equal protection of the laws and due process. However, as explained above, nothing in state law required the defendant to furnish plaintiff with detailed information regarding the deficiencies in plaintiff's submissions and the precise manner in which those deficiencies could be cured that would have amounted to furnishing legal advice. Likewise, this Court's review of applicable federal authorities reveals no case law ever holding that any such duty has ever been imposed upon court clerks as a necessary concomitant to a prisoners' constitutional right of access to the courts.

"It is clearly established that prisoners have a constitutionally protected right of access to the courts."[131] This right assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.[132] "Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses."[133] "A mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be 'adequate, effective, and meaningful.'"[134] As a necessary concomitant to this right, the state must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance.[135] However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.[136]

"While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a

130. *See Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Eason v.. Thaler*, 73 F.3d 1322, 1329 n. 3 (5th Cir.1996); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995); *Salas v. Carpenter*, 980 F.2d at 307; *Streetman v. Jordan*, 918 F.2d at 557 n. 3; *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir.1989); *Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir.1988); and *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir.1988).

131. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). *Accord Bounds v. Smith*, 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir.1989), *cert. denied*, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990); and *Hodge v. Prince*, 730 F.Supp. 747, 751 (N.D.Tex.1990), *affirmed* 923 F.2d 853 (5th Cir.1991).

132. *Brewer v. Wilkinson*, 3 F.3d at 820.

133. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir.1993), *quoting Chrissy F. v. Mississippi Department of Public Welfare*, 925 F.2d 844, 851 (5th Cir.1991).

134. *Crowder v. Sinyard*, 884 F.2d at 811, *citing Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983).

135. *See Bounds v. Smith*, 430 U.S. at 824–28, 97 S.Ct. at 1496–98; *Degrate v. Godwin*, 84 F.3d 768, 768–69 (5th Cir.1996); *Pembroke v. Wood County, Texas*, 981 F.2d 225, 229 (5th Cir.1993), *cert. denied*, 508 U.S. 973, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993); *Crowder v. Sinyard*, 884 F.2d at 811–12; and *Green v. Ferrell*, 801 F.2d 765, 772–73 (5th Cir.1986).

136. *See Lewis v. Casey*, 518 U.S. 343, ——, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996).

court." [137] For example, it is well-established in this Circuit that access to typewriters and copy machines is *not* an essential part of the right of access to the courts.[138] There simply is no constitutional right of access to carbon paper, reproduction equipment, or to face-to-face meetings with other inmates possessed by pretrial detainees or prisoners.[139] Prisoners possess no right to the assistance of any particular other prisoner or writ writer as long as the constitutional right of access to the courts by the putative recipient of such assistance is not infringed.[140] A prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library.[141] Furthermore, restrictions on direct access to legal materials may be warranted when prison security is involved.[142] However, arbitrary limitations and restrictions on access to legal materials, without the assistance of persons trained in the law, and without the ability of inmates in administrative segregation to examine legal digests, hornbooks, and other legal materials firsthand is unconstitutional.[143] Prisoners possess no constitutionally-protected right to file

frivolous lawsuits.[144] Finally, it is well-settled in this Circuit that, absent a showing of prejudice, a plaintiff cannot prevail on a claim that he or she was denied his right of access to the courts.[145]

In order to prevail on a denial-of-access-to-the-courts claim, a Section 1983 plaintiff must establish that he has been prejudiced in connection with some identifiable past, pending, or proposed legal proceeding.[146] Plaintiff has alleged that he attempted to file a state civil lawsuit of unspecified nature against unidentified persons or entities in July and October, 1996. Thus, plaintiff has *not* alleged any specific facts, much less furnished this Court with proper summary judgment evidence establishing, that the lawsuit he attempted to file in the state courts of Karnes County was non-frivolous.

Furthermore, as explained above, the constitutional right of access to the court has never been construed as including more than the ability of an inmate to prepare and transmit a necessary legal document to a court.[147] The proper summary judgment ev-

137. *See Lewis v. Casey*, 518 U.S. at ———, 116 S.Ct. at 2179–82; *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996); and *Brewer v. Wilkinson*, 3 F.3d at 821.

138. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988), (holding that denial of access to carbon paper and reproduction equipment and denial of face-to-face access to other inmates did not deprive an inmate of his right of access to the courts); and *Eisenhardt v. Britton*, 478 F.2d 855 (5th Cir.1973).

139. *See Beck v. Lynaugh*, 842 F.2d at 762.

140. *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996).

141. *Degrate v. Godwin*, 84 F.3d at 769.

142. *See Eason v. Thaler*, 73 F.3d at 1329; and *Morrow v. Harwell*, 768 F.2d 619, 622 (5th Cir. 1985).

143. *See Eason v. Thaler*, 14 F.3d 8, 9–10 (5th Cir.1994), (holding that allegations of a total denial of all access to the prison law library for 25 days following a prison riot stated a constitutional violation); *Pembroke v. Wood County, Texas*, 981 F.2d at 229, (holding that the total denial of all access to the law library for seven months violated the plaintiff's constitutional right of access to the courts), *citing Morrow v. Harwell*, 768 F.2d 619, 622 (5th Cir.1985), (holding that access

to a weekly bookmobile coupled with circumscribed assistance from law students was insufficient to afford meaningful access to the courts); and *Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir.1986), (holding that allowing inmates to select volumes twice each week from a list of books available in the County law library and limiting inmates to no more than two volumes at a time violated the inmates' rights to meaningful access to the courts).

144. *See Johnson v. Rodriguez*, 110 F.3d 299, 310–13 & 316 (5th Cir.1997), *cert. pending*.

145. *See Lewis v. Casey*, 518 U.S. at ———, 116 S.Ct. at 2179–82; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

146. *See Lewis v. Casey*, 518 U.S. at ———, 116 S.Ct. at 2179–82; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d at 413; *Henthorn v. Swinson*, 955 F.2d at 354; and *Richardson v. McDonnell*, 841 F.2d at 122.

147. *See Lewis v. Casey*, 518 U.S. at ———, 116 S.Ct. at 2179–82, (holding that a prisoner's right of access to the courts encompasses only a

idence now before this Court fails to raise a genuine issue of material fact with regard to whether the plaintiff ever complied with either Section 14.006(f) or Section 14.004 of the Texas Civil Practice and Remedies Code. The defendant has furnished an affidavit in which she states that the defendant failed to comply with Section 14.004 and the plaintiff has furnished this court with no proper summary judgment evidence refuting or controverting that statement. There is thus no proper summary judgment evidence now before this Court establishing that the plaintiff ever complied with Section 14.004 of the Texas Civil Practice and Remedies Code, which mandates that a prisoner proceeding In Forma Pauperis submit a *separate* sworn declaration or affidavit containing detailed information on his previous *pro se* lawsuits, including sufficiently detailed information about the nature of his previous claims to permit the state courts to determine whether the prisoner's new claims are frivolous or malicious. Thus, the defendant's refusal to accept the plaintiff's submissions for filing was consistent with the plain language of Section 14.004 and, therefore, *not* objectively unreasonable. Nothing in the constitutional right of access to the courts guarantees a litigant that he or she can file a civil lawsuit without first complying with all reasonable procedural requirements for doing so.[148] Plaintiff identifies no case law or other authority supporting his contention that the provisions of Section 14.004 violated his "clearly established" constitutional rights and this Court's independent research has located none in this Circuit. Plaintiff has not controverted the defendant's proper summary judgment evidence establishing that the plaintiff failed to comply with Section 14.004. That statutory provision has not been declared unconstitutional by any court of competent jurisdiction and the defendant's reasonable reliance upon the validity of same does not subject her to potential liability for monetary damages under Section 1983.

Plaintiff argues that the procedural prerequisites to prisoner filings contained in Chapter 14 of the Texas Civil Practice and Remedies Code themselves constitute an impermissible restriction upon his constitutional right of access to the courts and violate equal protection and due process principles. However, both the financial responsibility provisions of Chapter 14, which mirror the PLRA's financial responsibility provisions, and the portions of Chapter 14 requiring detailed information on previous litigation brought by the prisoner are reasonably related to the furtherance of a legitimate state interest and do not deprive plaintiff of equal protection, due process, or his right of access to the state courts. Pro se civil rights litigation has become a recreational activity for state prisoners in this Circuit and prisoners have abused the judicial system in a manner that non-prisoners have not.[149] "[N]o one, rich or poor, is entitled to abuse the judicial process."[150] It is malicious *per se* for a pauper to file successive In Forma Pauperis suits that duplicate claims made in other pending or previous lawsuits.[151] There is no constitutionally-protected right to file or pursue frivolous or malicious litigation.[152] Restrictions on the ability or indigent prisoners to proceed In Forma Pauperis do not implicate any constitutionally-protected right *per se*.[153] Neither prisoners nor indigents consti-

reasonably adequate opportunity to file non-frivolous legal claims challenging his conviction or conditions of confinement); *Johnson v. Rodriguez,* 110 F.3d 299, 310–11 (5th Cir.1997), (holding the same); *Eason v. Thaler,* 73 F.3d at 1329; and *Brewer v. Wilkinson,* 3 F.3d at 821.

**148.** *See Id.*

**149.** *See Carson v. Johnson,* 112 F.3d 818, 822 (5th Cir.1997); and *Gabel v. Lynaugh,* 835 F.2d 124, 125 n. 1 (5th Cir.1988).

**150.** *Hardwick v. Brinson,* 523 F.2d 798, 800 (5th Cir.1975).

**151.** *Pittman v. Moore,* 980 F.2d 994, 995 (5th Cir.1993); and *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988).

**152.** *See Johnson v. Rodriguez,* 110 F.3d 299, 310–11 (5th Cir.1997), (holding that the filing of frivolous claims could not form the basis for a finding of retaliatory conduct).

**153.** *See Carson v. Johnson,* 112 F.3d 818, 821–22 (5th Cir.1997), (upholding against equal protection and due process challenges the "three strikes" provision of the PLRA, which bars prisoners form proceeding In Forma Pauperis without advance permission from the court if they

tute a suspect class.[154] Deterring the filing of frivolous and malicious lawsuits, and thereby preserving scarce judicial resources is a legitimate state interest.[155]

The provisions of Section 14.004 of the Texas Civil Practice and Remedies Code are clearly intended to furnish state courts with the information they need to ascertain whether the claims a prisoner seeks to assert in the state courts have already been litigated on the merits or determined to be frivolous or malicious. With apologies to Joe Louis, while a prisoner might want to run from his own record of filing frivolous litigation, he cannot hide from same. Nothing in Section 14.004's requirement that a prisoner seeking to proceed In Forma Pauperis furnish the state courts with detailed information regarding the prisoner's own litigation history violates equal protection or due process principles. On the contrary, requiring such information prior to filing prisoner In Forma Pauperis lawsuits furthers the legitimate, *nay* compelling, state interest in protecting scarce judicial resources from the continued onslaught of prisoners, such as plaintiff herein, who have previously abuse the judicial system by filing frivolous or malicious lawsuits. Prohibiting prisoners with a history of frivolous and malicious lawsuits from proceeding In Forma Pauperis clearly serves to deter such abuses.[156]

Reasonable restrictions on the ability of *pro se* litigants, including prisoners, to proceed In Forma Pauperis do not constitute a denial of the constitutional right of access to the courts. Requiring litigants requesting permission to proceed In Forma Pauperis to furnish detailed information concerning their previous filings further a compelling state interest and does not violate constitutional principles. Therefore, insofar as plaintiff asserts that his constitutional rights were violated by virtue of the defendant's compliance with Chapter 14 of the Texas Code of Civil Procedure, those complaints do not furnish even an arguable basis for relief under Section 1983.

■ Plaintiff also complains that the defendant failed to adequately advise plaintiff regarding the exact nature of each and every defect contained in plaintiff's submissions of July and August, 1996. However, plaintiff's constitutional right of access to the courts does *not* encompass the right to compel court clerks to furnish him with free legal advice regarding the proper manner for complying with all procedural prerequisites to filing a civil lawsuit.[157] Chapter 14 of the Texas Civil Practice and Remedies Code is unambiguous in its directives to prisoners seeking to proceed In Forma Pauperis in the Texas courts. Plaintiff's ignorance of those provisions and his subsequent refusal to comply with same after having been advised of their existence by the defendant does not furnish a basis for a finding of a violation of plaintiff's constitutional rights.

### 3. *Monetary Damage Claims Against the Defendant in Her Official Capacity*

■ Insofar as plaintiff seeks monetary damages from the defendant in her official capacity, his claims are really asserted against Karnes County, Texas. As public officials performing discretionary tasks, individual public officers are entitled to assert the protection of *Harlow* qualified immunity. However, local governmental entities such as cities, counties, and school districts may not assert the protection of qualified immunity.[158]

have previously filed three or more federal civil lawsuits or appeals that were adjudged frivolous, malicious, or legally insufficient to state a cause of action).

154. *Carson v. Johnson,* 112 F.3d at 821–22.

155. *Carson v. Johnson,* 112 F.3d at 822.

156. *Carson v. Johnson,* 112 F.3d at 822.

157. *See Lewis v. Casey,* 518 U.S. at ——– ——, 116 S.Ct. at 2179–82, (holding that a prisoner's right of access to the courts encompasses only a reasonably adequate opportunity to file non-frivolous legal claims challenging his conviction or conditions of confinement); *Johnson v. Rodriguez,* 110 F.3d 299, 310–11 (5th Cir.1997), (holding the same); *Eason v. Thaler,* 73 F.3d at 1329; and *Brewer v. Wilkinson,* 3 F.3d at 821.

158. *See Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Meadowbriar Home for Children v. Gunn,* 81 F.3d 521, 532 (5th

For purposes of liability under Section 1983, cities, counties, and other local governmental entities are treated the same.[159] A suit against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity the official represents.[160]

In order to recover a judgment against a local governmental entity under Section 1983, a plaintiff must establish that he sustained a deprivation of constitutional or other federally-protected rights as a result of some official policy, practice, or custom of that governmental entity.[161] Although occasionally referred to as if they were three distinct creatures, a local governmental entity's *official* "policies," "practices," and "customs" are really three different terms for those actions which sufficiently bear the imprimatur of a governmental entity's final policy-makers to justify holding the governmental entity responsible therefor.[162] An official "policy" is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority.[163] A municipal "policy" must be a "deliberate and conscious choice" by a municipal policy-maker.[164] Whereas, an official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.[165]

A municipality is liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." The violation must be caused by a "municipal policy or custom" consisting of a " 'deliberate' or 'conscious' choice" "by city policy-makers." This Court has stated that a municipal policy may be established by a

---

Cir.1996); *Babb v. Dorman*, 33 F.3d 472, 475 n. 5 (5th Cir.1994); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 n. 36 (5th Cir.1993); and *Fields v. City of South Housion, Texas*, 922 F.2d 1183, 1191 (5th Cir.1991).

**159.** *See Colle v. Brazos County, Texas*, 981 F.2d at 244 n. 30.

**160.** *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3105; *Brandon v. Holt*, 469 U.S. at 471–72, 105 S.Ct. at 878; *Brooks v. George County, Mississippi*, 84 F.3d 157, 164 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 359, 136 L.Ed.2d 251 (1996), (holding that suit against county sheriff in his official capacity was suit against County); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996), (holding that claims against a City police chief in his official capacity were really claims against the City); *Bennett v. Pippin*, 74 F.3d 578, 584–85 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996); and *Sanders v. English*, 950 F.2d 1152, 1159 n. 13 (5th Cir.1992).

**161.** *See Board of County Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

**162.** *See Board of County Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——––——, 117 S.Ct. at 1388–89, (holding that only

*deliberate* conduct by a municipality which actually causes an injury is compensable under Section 1983).

**163.** *See Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1304–05 (5th Cir.1995), *cert. denied sub nom. Conley v. Eugene*, 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996); *Colle v. Brazos County, Texas*, 981 F.2d at 244–45; *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir.1992); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir.1990); and *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

**164.** *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality); *Gonzalez v. Ysleta ISD*, 996 F.2d 745, 752–60 (5th Cir.1993); *Colle v. Brazos County*, 981 F.2d at 245; and *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992).

**165.** *See Esïeves v. Brock*, 106 F.3d 674, 677 (5th Cir.1997), *cert. pending; Colle v. Brazos County, Texas*, 981 F.2d at 244–45; *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d at 92; *Johnson v. Moore*, 958 F.2d at 94; *Fields v. City of South Houston*, 922 F.2d 1183, 1192 (5th Cir.1991); *Matthias v. Bingley*, 906 F.2d at 1054; and *Bennett v. City of Slidell*, 735 F.2d at 862.

persistent pattern of conduct as well as by a formal legal declaration.[166]

■ Municipal liability under Section 1983 attaches only when the official responsible for establishing final policy with respect to the subject matter in question, makes a deliberate choice to follow a course of action from among various alternatives.[167] Thus, mere negligence on the part of local governmental final policy-makers does not give rise to governmental liability under Section 1983.[168] A municipality may be held liable under Section 1983 for failing to adopt a policy when that failure rises to the level of "deliberate indifference" to the need for such a policy.[169] Under this test, a governmental entity can be held liable if in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result in violations of constitutional rights, that the governmental entity's policy-makers can reasonably be said to have been "deliberately indifferent" to the need for the policy.[170] Mere negligence by policy-makers in the face of unconstitutional behavior by municipal employees is insufficient to establish municipal liability under Section 1983.[171]

Plaintiff's claims herein against the Karnes County District Clerk, a final policymaker of Karnes County, are *not* directed toward any local County policy, practice, or custom but, rather, are a collateral attack upon the constitutionality of Chapter 14 of the Texas Civil Practice and Reme-

dies Code. As explained at length above, there is no genuine issue of material fact in that cause as to whether plaintiff complied with Section 14.004. Plaintiff's proper summary judgment evidence now before this Court includes no evidence establishing that the plaintiff's submissions to the defendant contained any of the necessary information regarding plaintiff's previous litigation required by that statutory provision. As explained above, plaintiff's constitutional challenges to the requirements of Chapter 14 of the Texas Civil Practice and Remedies Code are wholly without merit. The plaintiff's failure to comply with those constitutionally-valid, state statutory, requirements and the defendant's refusal to file plaintiff's non-conforming submissions do not furnish even an arguable basis for a finding of liability on the part of Karnes County in this lawsuit.

### 4. *Requests for Injunctive Relief*

■ Liberally construed, plaintiff's claims in this lawsuit include requests that this Court enjoin the defendant from complying with the constitutionally-valid provisions of Chapter 14 of the Texas Civil Practice and Remedies Code and that this Court direct the defendant to file plaintiff's proposed state civil lawsuit despite plaintiff's failure to fulfil the requirements of Section 14.004, discussed above. Unlike plaintiff's requests for monetary damages discussed above, the defenses

**166.** *Richardson v. Oldham,* 12 F.3d 1373, 1381–82 (5th Cir.1994).

**167.** *See Board of Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——–——, 117 S.Ct. at 1388–89; *Pembaur v. City of Cincinnati,* 475 U.S. at 483–84, 106 S.Ct. at 1299–1300 (plurality); *see also City of St. Louis v. Praprotnik,* 485 U.S. at 121–22, 108 S.Ct. at 923; *Richardson v. Oldham,* 12 F.3d at 1381–82; *Gonzalez v. Ysleta ISD,* 996 F.2d 745, 752–60 (5th Cir.1993); *Colle v. Brazos County, Texas,* 981 F.2d at 244–45, *Rhyne v. Henderson County,* 973 F.2d at 392; and *Benavides v. County of Wilson,* 955 F.2d at 972–73.

**168.** *See Collins v. City of Harker Heights,* 916 F.2d 284, 286 (5th Cir.1990), *affirmed,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *see also Daniels v. Williams,* 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986);

*Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d at 307; *Streetman v. Jordan,* 918 F.2d at 557 n. 3; *Herrera v. Millsap,* 862 F.2d 1157, 1160 (5th Cir. 1989); *Lewis v. Woods,* 848 F.2d 649, 652 (5th Cir.1988); and *Simmons v. McElveen,* 846 F.2d 337, 339 (5th Cir.1988).

**169.** *See City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Colle v. Brazos County,* 981 F.2d at 245–46; *Rhyne v. Henderson County,* 973 F.2d at 392; and *Benavides v. County of Wilson,* 955 F.2d at 972–73.

**170.** *Id.*

**171.** *See Collins v. City of Harker Heights, Texas,* 916 F.2d at 286.

of qualified immunity and absolute immunity do not extend to suits for injunctive relief under Section 1983.[172]

However, injunctions are an extraordinary remedy, to be granted only when a party is threatened with injury for which he cannot obtain a sufficient legal remedy.[173] As explained at great length above, plaintiff's constitutional challenges to Chapter 14 of the Texas Civil Practice and Remedies Code are wholly without merit. It is undisputed that plaintiff's submissions to the defendant in July and August, 1996 failed to comply with the statutory prerequisites to prisoner In Forma Pauperis filings in the Texas courts. Plaintiff is entitled to federal injunctive relief on his constitutional claims only if a reasonable likelihood exists the plaintiff will *again* be subjected to the unconstitutional actions.[174] Because plaintiff has failed to establish even an arguable basis for a finding that his constitutional rights were *ever* violated by the defendant, plaintiff is not entitled to prospective injunctive relief in this cause.

### E. *Request for Intervention*

On November 21, 1996 plaintiff's fellow Connally Unit inmate Earnie Gipson filed a motion seeking leave to intervene in this cause.[175] In an Order issued November 26, 1996, this Court denied that motion but directed the Clerk to treat that motion for leave to intervene as a separate lawsuit.[176]

On December 12, 1996, Gipson filed a motion for joinder of his separate lawsuit and this one.[177] The Magistrate Judge recently denied that request.[178]

### III. *Plaintiff's Motion for Default Judgment*

On June 25, 1997, some six days *after* the defendant filed a timely original answer herein, the plaintiff filed a motion for default judgment in which he took issue with the degree of specificity contained in the defendant's original answer.[179] "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." [180] The problem with plaintiff's request for default judgment is that the defendant's answer was timely. Rule 55, Fed.R.Civ.P., governs plaintiff's motion requesting entry of a default judgment against the defendant herein. Plaintiff filed his motion for default judgment on June 25, 1997, six days after defendant filed her timely original answer. Nothing in Rule 55 authorizes a court to strike a defendant's answer and render a default judgment simply because the plaintiff is dissatisfied with the amount of detail contained in the defendant's answer. Thus, entry of a default judgment based upon the defendant's failure to timely file an answer which satisfied the personal whims and caprice of the plaintiff was *not* authorized in this cause.[181] Plaintiff's re-

---

172. *See Valley v. Rapides Parish School Board,* 118 F.3d 1047, 1051 n. 1 (5th Cir.1997); and *Chrissy F. by Medley v. Mississippi Department of Public Welfare,* 925 F.2d 844, 849 (5th Cir.1991).

173. *See DSC Communications v. Next Level Communications,* 107 F.3d 322, 328 (5th Cir.1997); and *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 n. 3 (5th Cir.1996), (holding that prospective injunctive relief is appropriate in a federal civil rights action only if a reasonable likelihood exists the plaintiff will again be subjected to the unconstitutional actions).

174. *See Wallace v. Texas Tech University,* 80 F.3d at 1047 n. 3.

175. *See* docket entry no. 8.

176. *See* docket entry no. 10.

177. *See* docket entry no. 14.

178. *See* docket entry no. 46.

179. *See* docket entry no. 31.

180. *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir. 1996).

181. *See Sun Bank of Ocala v. Pelican Homestead & Savings Association,* 874 F.2d 274, 277 (5th Cir.1989), (holding that default judgment could not be rendered after the defendant had served plaintiff with a copy of a motion to dismiss that had not then been filed); *Charlton L. Davis & Co., P.C. v. Fedder Data Center, Inc.,* 556 F.2d 308, 309 (5th Cir.1977), (holding that a default judgment could not be rendered after defendant's counsel telephoned plaintiff's attorney to request additional time within which to answer); and *In re Zorrilla,* 115 B.R. 894, 897 (Bankr.W.D.Tex. 1990), (holding that a default judgment could not be rendered without satisfying the procedural requirements of Rule 55(b)(2), Fed.R.Civ.P., *after* the defendant had made an appearance in the lawsuit by filing an answer in state court in a case that had been removed to federal court).

quest for a default judgment was legally frivolous.

## IV. *Conclusions*

 Plaintiff's constitutional claims herein are all legally frivolous.[182] While the Clerks of the federal district courts frequently employ attorneys who can lawfully give legal advice to litigants or potential litigants, the elected District Clerks of Texas' many counties rarely employ attorneys for such purposes and are not constitutionally obligated to furnish prisoners with the sort of legal advice the Clerks of the federal courts provide to pro se litigants. The defendant's rejection of plaintiff's submissions was based upon an objectively reasonable reliance upon a constitutionally valid state statutory scheme that imposes perfectly appropriate burdens upon prison inmates who wish to proceed In Forma Pauperis in the state trial courts. All of the plaintiff's requests for relief in this cause are without merit. Plaintiff's motion for default judgment was both frivolous and malicious and worthy of sanction.

## V. *Filing Fee*

 Alternatively, in the event that an appellate court might disagree with any of the foregoing analysis, plaintiff's claims herein must be dismissed pursuant to Rule 41(b), Fed.R.Civ.P., for failure to pay the filing fee.[183] This Court ordered plaintiff to pay the full filing fee in this cause by September 26, 1997.[184] Pursuant to Title 28 U.S.C. Section 1915(g), plaintiff is statutorily ineligible to proceed In Forma Pauperis in this cause because he has previously filed more than three lawsuits or appeals that were subsequently dismissed as frivolous,[185] and plaintiff has alleged no facts establishing that he is currently under imminent threat of serious physical injury. Therefore, the statutory exception to the PLRA's "three strikes" provision does not apply in this cause and plaintiff must pay the full filing fee in this cause. To date plaintiff has failed to do so and his claims herein must therefore be dismissed for failure to prosecute and comply with this Court's Order of September 8, 1997.[186]

Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2. In all other respects, all of the plaintiff's objections [187] to the Magistrate Judge's Orders are **OVERRULED.**

3. All of the plaintiff's motions [188] requesting either discovery, an evidentiary

**182.** A lawsuit which does not appear frivolous on the face of the pleadings may turn out to be so when the pleadings are pierced at summary judgment. *See Johnson v. Rodriguez,* 110 F.3d at 311 n. 16. Plaintiff's claims herein were of such a nature.

**183.** Rule 41(b), Federal Rules of Civil Procedure, allows a district court to dismiss a case when the plaintiff fails to prosecute his case. *Martinez v. Johnson,* 104 F.3d 769, 771 (5th Cir.1997), (habeas corpus action); *Dorsey v. Scott Wetzel Services, Inc.,* 84 F.3d 170, 171 (5th Cir.1996), *quoting Salinas v. Sun Oil Co.,* 819 F.2d 105, 106 (5th Cir.1987). The court may dismiss for want of prosecution either on a motion of a defendant or *sua sponte* when the court determines dismissal is necessary to achieve the orderly and expeditious disposition of cases. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Clofer v. Perego,* 106 F.3d 678, 679 (5th Cir.1997), (holding that district courts possess the inherent authority to dismiss an action *sua sponte* for failure to prosecute, with or sans notice to the parties); *Martinez v. Johnson,* 104 F.3d at 771; *Long v. Simmons,* 77 F.3d 878, 879 (5th Cir.1996), (holding that a court may *sua sponte* dismiss pursuant to Rule

41(b) for failure to comply with a court order); *McNeal v. Papasan,* 842 F.2d 787, 789 (5th Cir. 1988); *McCullough v. Lynaugh,* 835 F.2d 1126, 1127 (5th Cir.1988). The court's power to dismiss is an inherent aspect of its authority to enforce its orders and ensure the prompt disposition of lawsuits. *Link,* 370 U.S. at 630–31, 82 S.Ct. at 1388–89; *Clofer v. Perego,* 106 F.3d at 679; *Martinez v. Johnson,* 104 F.3d at 771; *Boudwin v. Graystone Insurance Co., Ltd.,* 756 F.2d 399, 401 (5th Cir.1985); *Ramsay v. Bailey,* 531 F.2d 706, 707 (5th Cir.1976), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977).

**184.** *See* docket entry no. 47.

**185.** *See Adepegba v. Hammons,* 103 F.3d at 384–87; and the Magistrate Judge's Order of July 25, 1997, docket entry no. 36..

**186.** *See* docket entry no. 47.

**187.** *See* docket entry nos. 34, 37, and 45.

**188.** *See* docket entry nos. 38–42.

hearing, or a continuance pending a final ruling on the defendant's motion for summary judgment are **DENIED**.

4. Plaintiff's motion[189] for default judgment is **DENIED**.

5. Defendant's motions[190] for summary judgment are **GRANTED** and all of the plaintiff's claims are **DISMISSED WITH PREJUDICE** as frivolous.

6. All other pending motions are **DISMISSED AS MOOT**.

7. The Clerk shall prepare and enter a Judgment in conformity with this Order.

8. The Clerk shall send a *certified* copy of the Judgment dismissing plaintiff's claims against the defendant herein as frivolous, along with a copy of this Memorandum Opinion and Order, to the Texas Department of Criminal Justice in accordance with Section 498.0045 of the Texas Government Code.

---

189. *See* docket entry no. 31.

190. *See* docket entry nos. 29 and 35. In an Order issued June 30, 1997, the Magistrate Judge advised the parties that the first of these two pleadings would be treated for all purposes as a motion for summary judgment. *See* docket entry no. 33.